SAMANTHA GOULD, Appellant, v. SIMON SCHERMER.

**Bridges:** ROAD SUPERVISORS: *Jury question.* Where plaintiff was injured by a fall from a bridge, due to the frightening of her horse by the passing of a horse under a bridge on a cattle passageway constructed by defendant for his own convenience, and without authority, the question whether defendant, as road supervisors, was negligent in not placing guards or rails on the bridge, was for the jury, though guards or rails were not required by law.

RESOLUTION OF TOWNSHIP TRUSTEES. Since Code, section 1001, expressly provides that public bridges must not be less than sixteen feet wide, a road supervisor is not justified, by a resolution of the township trustees, in erecting a bridge only fourteen feet wide; and such resolution should not be submitted to the jury as bearing on the degree of the supervisor's negligence or want of care.

NEGLIGENCE. A charge that a road supervisor was chargeable only for "gross negligence" in erecting a public bridge, is erroneous, since he is chargeable for want of ordinary or reasonable care.

*Proximate cause.* The fact that some other cause operates with the negligence of the defendant to produce the injuries complained of, will not relieve him from liability, if his wrong, concurring with such other cause, was the proximate cause of the injury.

*Rule applied.* One who, without authority, constructs a cattle pass under a bridge, which causes an injury to one driving over the bridge, who is free from contributory negligence, is not relieved from liability because the failure to erect barriers on the bridge or the failure to make it the width required by law, concurred in causing the injury.

OPINION EVIDENCE: *Text books.* On an issue as to whether plaintiff was guilty of contributory negligence in driving over a bridge, with no railings or guards, a horse which was blind in one eye, text books relating to the effect of blindness in horses are inadmissible, since the subject is not one of expert testimony, but depends on the knowledge of the disposition of the particular

animal. One is not, as matter of law, guilty of contributory negligence in driving a horse blind in one eye across a bridge.

**Contributory Negligence:** *Habits as to care.* A charge that, in determining the contributory negligence of a person injured, the jury could consider plaintiff's habits of life as to care and prudence, was erroneous, since the standard is the care which the ideal averagely prudent man would exercise.

**Construction of Pleadings.** While plaintiff was driving over a bridge erected by defendant road supervisor, her horse became frightened by a horse which was passing under the bridge, over a passageway constructed by defendant without authority, for his own convenience, and plaintiff was injured by falling from the bridge. The first count alleged negligence in constructing a bridge without guard rails, and the second count set up wrongful construction of the passageway, without referring to the bridge, and the reference to the bridge in the first count related only to the defendant's duty in connection with the construction of such passageway. *Held,* that the two counts were substantially the same.

*Appeal from Delaware District Court.*—HON. J. J. TOLERTON, Judge.

FRIDAY, APRIL 9, 1897.

ACTION at law to recover damages for injuries sustained by plaintiff by reason of the alleged negligence of defendant in constructing a bridge in a certain highway in Delaware county, and in creating a nuisance by erecting a cattle pass under said bridge without authority. Trial to a jury. Verdict and judgment for defendant, and plaintiff appeals.— *Reversed.*

*John B. Utt, A. A. House,* and *Yoran & Arnold* for appellant.

*Chas. Husted* and *Dunham & Norris* for appellee.

DEEMER, J.—At the time of the mishap in question defendant was a road supervisor, and as such built a bridge across the highway in his district to

replace one previously existing at the same point. He made the new bridge two feet and seven inches higher, six feet longer, and about the same width as the old. The distance from the top of the bridge to the channel which it crossed was six feet and six inches. The bridge was about fourteen feet and three inches wide, instead of sixteen, as required by statute, and it had no guards or barriers. Shortly after building the bridge, the defendant, who owned lands on either side of the highway in which this bridge was located, without permission of the local authorities, erected wing fences extending from the highway fences to the approaches to the bridge, leaving the road fences in place, but with the idea that, if the highway fences should be carried away by high water, his stock could not get upon the highway and run at large. For some months prior to the time of the accident these highway fences were down, and defendant's stock was using the way fenced off by these wing fences as a means of passing from one side of the highway to the other. About the first of November, 1892, the plaintiff, then about seventy-two years of age, started from Strawberry Point, in Clayton county, Iowa, to drive to some point in Illinois. She was alone, and was driving a single horse, which was blind in one eye, attached to a buggy, in which she was carrying meat, butter and canned goods. As she drove onto the bridge in question a horse ran under it, and so frightened the one she was driving that it suddenly sprang to one side, and with the vehicle to which it was attached fell off the bridge, precipitating the plaintiff to the ground beneath, and causing a fracture of her right thigh bone. This action is to recover damages sustained thereby, and the alleged grounds of negligence are the construction of the cattle pass without authority, and the building of the bridge without railings or barriers at and along the

sides of the same to protect travelers from driving or falling off. These charges of negligence are combined in the original petition, but in an amendment thereto the plaintiff separated them, and made the first charge of negligence a second count to the petition, and the second a third count. The defendant's answer is (1) a general denial; and (2) an admission that he built the bridge as road supervisor, to replace one which was badly decayed and out of repair; that his term of office expired January 1, 1892; and that no notice in writing of the unsafe condition of the bridge was ever served upon him.

More than one hundred errors are assigned, and it is manifest that we cannot consider all of them. Such as are argued are presented under eleven heads, and to such of these as we deem important we will turn our attention.

I. The first complaint is of the error of the court in stating the issues. In presenting the case to the jury, the court set forth the substance of plaintiff's claim as made in the original petition, and then stated that the second count was substantially the same, except that plaintiff stated therein some additional items of damage. The court also set forth in concise language the charge in the third count of the petition. The error complained of relates to that part of the charge which says that the first and second counts were the same in substance. It is true the first count makes reference to the bridge and the second does not, but, in each, liability is predicated upon the charge that the cattle pass was constructed without authority and was the proximate cause of plaintiff's misfortune. In the first it is said that defendant unlawfully built the cattle pass, and that he carelessly and negligently failed to put up guards or barriers at and along the sides of the bridge to protect travelers from driving or falling off the same.

But this reference to the bridge did not relate to any duty of the defendant, except as it arose in connection with the construction of the cattle pass. The negligence arising from defendant's breach of duty in failing as road supervisor to construct the bridge with proper care, was charged in the third count of the petition and was correctly stated in the charge. The second count was, then, in substantially the same form as the first, although it omitted specific reference to the bridge.

II. The court allowed in evidence, over plaintiff's objection, a record of the township trustees of the township in which defendant was a road supervisor, to the effect that bridges might be constructed in that township fourteen feet in width; and in connection with this evidence gave the following instructions: "(7) The law clothes road supervisors with the power, among others, of keeping the township bridges in repair, and also with the power to build new bridges as and when required, and it is the duty of the road supervisor to do this work in his district; and in doing it he is to exercise his own judgment as to what is needed, as well as when it should be done, and, it being his official duty, he can only be held liable for gross negligence on his part. If the work done by him is done with ordinary care, that is, with such care as men would ordinarily give, he would not be liable for defects which might exist; but if he should be grossly negligent then he would be liable for injuries occurring by reason thereof. (8) If the law prescribes the way and manner in which any bridge shall be built, as, for instance, if the law prescribes the width of bridges, the road supervisor will be expected and required to follow the law, and, if he does not do so, the same will be negligence and carelessness on his part, for which he will be answerable; but if, from the evidence, you find that the township

trustees gave direction as to the width of the bridges in the township, and that such directions were followed by defendant in building the bridge in question, this may be considered by you in lessening or modifying the negligence and carelessness of defendant. (9) The statutes of Iowa require that bridges of the character of the one in question shall be constructed sixteen feet wide, and this one, having been built but little over fourteen feet wide, is not a compliance with the statute, and cannot be said to be a lawful bridge. The law, however, places some authority over work upon township bridges in the hands of township trustees; and if you find that the said trustees acted in the matter, and directed the width of bridges in the township wherein this one is located, and you further find that the defendant, acting as road supervisor, did construct the bridge in question, of the width prescribed by the township trustees, then in so constructing, while he would still be careless and negligent, the degree of such carelessness and negligence would be a question for you to determine." The admission of this evidence and the giving of these instructions was clearly erroneous. The law (Code, section 1001) provides that bridges erected or maintained by the public, must not be less than sixteen feet in width. The township trustees had no authority to resolve that they should be less, and the fact that they did so would be no excuse or justification to the defendant. The instructions are also faulty, because of the use of the words "gross negligence." The degree of care required of defendant in constructing the bridge, was ordinary and reasonable— that which an ordinarily prudent person would use under like circumstances, not the slight foresight to be inferred from the language used by the court. It is well understood that while the books speak of slight, ordinary, and gross negligence, yet the use of such a

classification in instructions to juries, as well as in text-books, is generally thought to be wrong in principle and likely to confuse and confound. *Kerns v. Railroad Co.*, 94 Iowa, 121 (62 N. W. Rep. 692). The cases of *Koester v. Ottumwa*, 34 Iowa, 41, and *McCord v. High*, 24 Iowa, 336, sustain our conclusions on this branch of the case.

III.   In the tenth instruction the court said "that the law does not require a guard or railing to be placed along the sides of the bridge, and you need not take that into consideration in determining the liability of defendant." As applied to the facts, that instruction was wrong. It was a question of fact for the jury to determine whether the construction of the bridge without railings or barriers, in view of its situation and the use to which it was put, was negligence. *Simons v. Township of Crasco* (Mich.) 63 N. W. Rep. 500; *Gage v. Railroad Co.*, Id. 318; *Palmer v. Inhabitants*, 2 Cush. 600; *Miller v. Boone County*, 95 Iowa, 5 (63 N. W. Rep. 352).

IV.   The court also instructed the jury, in effect, that if there were other causes than that of the cattle way or defective bridge concurring to produce the injury, plaintiff could not recover; unless these causes were also the wrongful act of the defendant. Such instructions were erroneous, for the rule of law is well settled that the mere fact that some other cause operates with the negligence of the defendant to produce the injury does not relieve the defendant from liability. His original wrong, concurring with some other cause, and both operating proximately at the same time in producing the injury, makes him liable whether the other cause was one for which the defendant was responsible or not. *West v. Ward*, 77 Iowa, 323 (42 N. W. Rep. 309); *Liming v. Railroad*, 81 Iowa, 247 (47 N. W. Rep. 66); 16 Am. & Eng. Enc. Law,

441, 442; *Langhammer v. City of Manchester*, 99 Iowa, 295 (68 N. W. Rep. 688).

V.   The instructions as to contributory negligence are not as clear as they might be, in that they say that plaintiff cannot recover if there was any want of care or negligence on her part, without reference to whether it contributed to the injury or not. True, in other places the correct rule is given, and the case should not be reversed for this fault alone. We mention it in order that it may be avoided upon a re-trial.

VI.   The plaintiff asked instructions to the effect that if the defendant built the cattle pass without authority, and that such obstruction of the highway caused or contributed to plaintiff's injury, then plaintiff, if free from negligence on her part contributing thereto, would be entitled to recover, although there was a concurring cause, as the failure to erect barriers, or the narrowness of the bridge, or the frightening of the horse. These instructions, or others embodying the same thought, should have been given. The erection of the cattle pass or its adoption by the defendant as such, after he claims the highway fences were washed away, was a nuisance for which he was responsible to any person injured thereby. Had he secured permission from the board of supervisors to construct the same, it would have been upon condition that he be responsible for all damage that might arise from its construction or for the same not being kept in good repair. McClain's Code, section 1461. And, had he obtained permission from the township trustees to cross the highway under the bridge, it would have been under such conditions in regard to the maintenance of the bridge and cattle way as they might have seen fit to impose. Id. section 1463. Surely, defendant has no greater rights by reason of having constructed his cattle pass without permission than he would have

had had he obtained the permission of the proper authorities. The lower court attempted to cover this point in its instructions, but so confused it with the propositions referred to in the fourth paragraph of this opinion as to mislead and bewilder the jury.

VII. Over the objection of plaintiff, defendant was permitted to introduce in evidence certain passages from books entitled, "Youatt on the Horse," and "Special Report on Diseases of the Horse," from the United States department of agriculture. These passages have reference to the effect of blindness in horses, and were evidently introduced for the purpose of showing that plaintiff was negligent in driving a horse which was blind in one eye. The ultimate question to be here determined was whether plaintiff was guilty of contributory negligence in driving the horse she did. This depends, of course, upon her knowledge of the character and disposition of the particular animal, and not upon what expert text writers may say of such animals in general. Expert testimony was not needed to determine the question as to whether the horse plaintiff was driving was likely, on account of its blindness, to take fright or shy. Such a trait, if present, was open to the observation of any one who knew the animal, and the reasons for it were entirely immaterial. We do not think these books were admissible evidence, for the further reason that they state matters open to the observation of every one who has had any experience with horses, and give reasons which are common property to all men of ordinary experience in life. The question of contributory negligence is not to be determined by what text writers say horses will do under certain conditions, but rather upon the knowlege that the driver had of the unsafe or dangerous character of the particular horse. These books were not admissible in evidence.

VIII. In referring to contributory negligence, the court said to the jury that they should take into consideration the class to which plaintiff belonged, including her habits. We do not exactly understand what was meant by the use of this last word, unless it be her habits of life, as to care and prudence. If this be the thought, then the instruction was clearly wrong. The law prescribes a standard of conduct to which all must conform,— the conduct of an ideal average prudent man. Beach, Contrib. Neg., section 22; Holmes, Com. Law, page 108. Such conduct is reasonable and ordinary care; the want of it, negligence. This standard does not apply, of course, to persons *non sui juris*. But there is no claim that plaintiff falls within these exceptions. Some other errors are complained of, but enough has been said to indicate our views as to the law of the case and to properly guide the court below upon a retrial. Since the submission of this case, the death of the plaintiff has been suggested. On motion of appellant's counsel, her administrator, S. T. Richards, is substituted as plaintiff and appellant. For the errors pointed out the judgment is REVERSED