ANNIE M. HARVEY v. THE CITY OF CLARINDA, Appellant.

**Negligence:** DEFECTIVE HIGHWAY: *Jury question.* It is not negligence, as a matter of law, for one to use a highway having a defect in it.

PROXIMATE CAUSE: *Co-operating negligence.* The fact that in producing an accident the fright of plaintiff's horse operated with the negligence of defendant city, consisting in the narrowness of an embankment, used as an approach to a railroad crossing, the precipitate character of the banks, and the absence of railings, does not prevent defendant's negligence from being a proximate cause of the accident, and rendering it liable therefor.

STATUTES: *Construction.* Code, section 1051, requiring notice within thirty days to a city of injury from a defective street,

being found in chapter 14 relating to cities under special charter, and having been adopted by the same general assembly as the first section of such chapter (Code, section 933), expressly providing that the provisions of the chapter shall apply only to cities acting under special charter, cannot be construed to apply to other cities.

**Requesting Instructions.** In the absence of request, a failure to give an instruction relating to the burden of proof is not error.

*Appeal from Page District Court.—*HON. A. B. THORNELL, Judge.

MONDAY, MAY 21, 1900.

ACTION at law to recover damages for injuries received by plaintiff while driving along one of the streets in defendant city. The defendant demurred to the petition, and its demurrer being overruled, it filed an answer denying the allegations of the petition. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*H. E. Parslow* and *Smith McPherson* for appellant.

*J. R. Good* and *T. E. Clark* for appellee.

DEEMER, J.—Defendant is a city of the second class. While driving along one of the streets of that city, plaintiff was thrown from the vehicle in which she was riding, and received the injuries of which she complains. The accident occurred August 24, 1898, and plaintiff commenced her action November 19, 1898. The demurrer was on the ground that the action was barred because no written verified statement of the claim was presented to the city council within thirty days after the plaintiff received her injury, as required by section 1051 of the Code. That section requires a written verified statement of the amount, nature, and cause of the injury, and of the time and place where the injury

occurred, to be presented to the council or filed with the clerk within thirty days after the alleged injury was sustained. It is found in chapter 14 of the Code, relating to cities under special charters; and the first section of that chapter (section 933 of the Code) expressly provides that the provision of the chapter shall apply only to cities acting under special charters. With this plain declaration of legislative intent, there is no room for construction. If the section relied on were found in a chapter headed as this one is, there might be room for argument, but with this plain expression of legislative purpose found in the first section of the chapter, considered in connection with the thought that both sections were adopted by the same general assembly, there is no room for interpretation. The demurrer was properly overruled.

II. Defendant contends that its alleged negligence was not the proximate cause of the injury. The jury was authorized to find the following facts: Main street, which is one of the principal ones of the city, intersects the right of way of the Chicago, Burlington & Quincy Railroad in the eastern part of the city. At such intersection there are two ways for crossing the railroad track,—one by means of an underground crossing, and the other by what is called a "grade crossing." The railroad track at the point in question is seven and three-tenths feet above the ground level of the street, necessitating an elevated approach either side of the track. This approach is made of dirt. It is one hundred and forty-four feet in length on the west side of the railroad track, and seventeen feet in width at the narrowest point. Immediately west of the west rail of the track it is forty feet in width, but the crossing itself is but seventeen feet wide. The crossing is planked in the ordinary manner. For the first one hundred feet the rise is two and sixty-five-hundredths feet in one hundred, and four and sixty-five-hundredths feet in the remaining forty-four. Between this approach and the north line of the

street is the entrance to the underground crossing, and the slope between the driveways at the point where plaintiff received her injuries is thirteen feet wide. The approach has no railings or barricades of any kind. On the evening of the day in question, plaintiff was driving east on Main street, intending to cross the railway tracks by the grade crossing, and when her horse had about reached the west rail of the tracks he suddenly turned to the north, and kept on turning until he had the buggy to which he was attached faced westward. Just after he turned and started towards the west, the wheels on the north side of the buggy reached the sloping ground of the approach, causing the buggy to tip to the north, and plaintiff to be thrown therefrom. The alleged negligence is the width of the embankment, the precipitous character of the banks, and the absence of railings or barriers. It is conceded that neither party is at fault or responsible for the horse's turning, and it is also agreed that, after he commenced to turn, plaintiff was free from negligence; but it is contended on behalf of defendant that it was not bound to provide against such accidents, and that, conceding its negligence, still the court ought to say, as a matter of law, that this negligence was not the proximate cause of the injury. There are some cases which hold that a city is not bound to anticipate such accidents, that it is not bound to provide against any use of its streets not contemplated in ordinary travel, and that, if the person injured is not at the time using the streets for the ordinary purposes of travel, he cannot recover. We have not fully adopted this rule. Of course, the city is not bound to do more than guard against ordinary contingencies, or those which might reasonably be apprehended. In other words, it is not an insurer against all accidents, and it is responsible only when it fails to use reasonable care to keep its streets in reasonably safe condition for public travel. But if it fails in this, and injury results, not due to want of ordinary care on the part of the person injured, it is

responsible.  The mere fact that the driven horse is fright-
ened or is temporarily unmanageable is not in itself conclu-
sive.  Now, the jury evidently found that defendant was
negligent, and with that finding we cannot interfere; but
should we say that this negligence was not the proximate
cause of plaintiff's injury?  Ordinarily, proximate cause is
for the jury, and we see nothing in this case that takes it
out of the ordinary rule.  The fact that the horse, by reason
of its disposition or habit, turned around on the embank-
ment, is not controlling, unless plaintiff was in some manner
responsible therefor.  It is conceded, however, that she was
not.  The question for the jury was, then, would the acci-
dent, have happened had defendant used the care required
of it?  It goes without saying that if, notwithstanding the
use of proper care on defendant's part, the accident would
still have happened, there could be no recovery.  But that
question, as we have said, was for the jury.  In the case of
*Walrod v. Webster County*, 110 Iowa, 349, we had occasion
to consider the effects of the fright of a horse being driven
over a county bridge, on the issue of proximate cause, and
there followed the rule theretofore announced in *Gould v.
Schermer*, 101 Iowa, 582, and other like cases,
wherein it is held that the mere fact that some other
cause operates with the negligence of defendant to
produce the injury does not relieve the defendant.  His orig-
inal wrong, with some other cause for which neither is re-
sponsible, and both operating proximately at the same time
in producing the injury make him liable.  That case also
distinguishes *McClain v. Incorporated Town of Garden
Grove*, 82 Iowa, 235, relied on by appellant.  The rule
in Massachusetts, and perhaps some other New Eng-
land states, differs from ours.  See *Marble v. City of
Worcester*, 4 Gray, 395.  But the great weight of authority
is with us.  See cases cited in *Walrod v. Webster County*,
110 Iowa, 349.  The instructions given by the court fairly
submitted the question of proximate cause, and we should not

interfere with the verdict. See *City of Atlanta v. Wilson,* 59 Ga. 544 (-27 Am. Rep. 396).

III. The further point is made that plaintiff was guilty of contributory negligence. Ordinarily that, too, is a question for the jury. It was submitted in this case, and a finding of no contributory negligence returned. We are asked to hold that, as a matter of law, plaintiff was guilty of negligence contributing to her injury. Both ways of crossing were open to plaintiff, as the defendant did nothing to indicate that the grade crossing was unsafe. By leaving the approach open to travel it impliedly invited the public to use it. Plaintiff had many times driven over both crossings, and was perfectly familiar with the situation. There also were other crossings that plaintiff might have taken to reach her destination, and she might have used the underground crossing. The jury was also authorized to find that there was nothing in the character or the disposition of the horse that made it negligent for plaintiff to drive the animal. Although there may have been a defect in the highway, it was not negligence, as a matter of law, for plaintiff to use the street. That question is settled by a long line of authorities. *Hoover v. Town of Mapleton,* 110 Iowa, 571; *Sylvester v. Town of Casey,* 110 Iowa, 256, and cases cited. Further, in this connection, it is said that the court erred in not instructing the jury that the burden of proof was on plaintiff to excuse herself for not taking the safe crossing. Defendant asked no instructions relating to this subject and therefore cannot complain. The usual and proper instruction with reference to plaintiff's duty, if she knew the crossing she attempted to use was dangerous, was given, but nothing was said as to the burden of proof. In the absence of request, failure to give an instruction relating to the burden of proof is not erroneous. *Duncombe v. Powers,* 75 Iowa, 185; *Martin v. Davis,* 76 Iowa, 762.

We have considered all points argued, and find no error. —AFFIRMED.