Gusie Sewing, v. Harrison County, Appellant.

**Negligence:** CUSTOM AS A DEFENSE. The usual custom of performing work is not a defense to a charge of negligence for performing it in a like manner; as defendant can not avoid liability, if negligent, by a showing that it had always been negligent in the same respect.

**Same:** REPAIR OF BRIDGES: SPECIAL FINDING. Where two or more causes unite in producing an accident, all of which are proximate, because without the operation of all no injury would have occurred, liability therefor exists. Thus where a county, in repairing a bridge, piled lumber on the bridge; failed to nail down new plank already laid, and piled old plank on the approach to the bridge; and it appeared that plaintiff's team became frightened at the pile of new plank, then by the rattle of the unnailed plank and afterward was still further frightened by the pile of old plank, and all three grounds of negligence were submitted to the jury as charged, with instruction that plaintiff could recover if defendant was negligent in any or all respects, a special finding that the pile of old lumber at the end of the bridge was not the original cause of the fright of the team, and that the accident would not have occurred except for its fright thereat, did not negative negligence in the other respects charged and was not therefore inconsistent with a general verdict for plaintiff.

**Same:** BRIDGES: APPROACH. Whether the approach to a bridge is part of the bridge is usually a question for the jury, and in this instance the evidence justified a finding that the pile of old lumber at the end of the bridge occupied a part of the approach.

**Same:** INSTRUCTIONS. With a finding that the old lumber was piled on the approach to the bridge, an instruction that defendant might be found negligent in piling the same where it would frighten teams while on the bridge or approach thereto, was not prejudicial to defendant.

**Same:** ASSUMPTION OF FACTS. The court's statement that it was conceded that when the men quit work the laying of the new floor of the bridge was not completed, could not have been understood to mean that one of the grounds of negligence charged, failure to nail the new plank, was conceded.

**Same:** PERSONAL INJURY: VERDICT. A verdict for $5,394.52 is held
not so excessive as to indicate passion and prejudice, where it
appeared that plaintiff's spine was so injured as to permanently
affect her nervous system and general health, and that she had
suffered great pain as a result.

*Appeal from Shelby District Court.*—HON. E. B. WOOD-
RUFF, Judge.

THURSDAY, MAY 16, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*T. C. Smith* and *Sanford H. Cochran,* for appellant.

*Saunders & Stuart,* and *D. O. Stuart,* for appellee.

SHERWIN, J.—The defendant built and maintained a
bridge over the Boyer river, on a north and south highway.
Its servants were replanking this bridge, and, when they
quit work on Saturday, they had laid new oak plank on
all but about sixteen feet of the bridge. They left a pile
of new plank on the west side of the bridge, about midway
of its length, and a pile of the old plank at the north end
of the bridge, on the east side of the dirt roadway. On
Sunday morning the plaintiff with her father and mother
and other members of the family were in a conveyance,
going north on said highway; her father driving the team
of two horses. They drove onto the bridge from the south,
and when they reached the pile of new plank, the team
became frightened thereat, shied to the east, and started
to run. Some of the new plank that had been placed on
the floor north of the center of the bridge had not been
spiked down, and, when the team was running over them,
they moved, and contributed to the fright of the team,
and, when the north end of the bridge was reached, the
team was still further frightened by the old pile of plank,

shied at that, and ran into the ditch on the west side of the turnpike, where the wagon was turned over, and the plaintiff injured. The charges of negligence were the leaving of the pile of new lumber on the bridge, the leaving of the plank on the floor of the bridge loose and unspiked, and the leaving of the old plank at the north end of the bridge and on the embankment or approach thereto. In answer to special interrogatories, submitted to the jury at defendant's request, the jury found that the pile of old lumber near the north end of the bridge did not cause the team to take fright and run off from the bridge; that the pile of old lumber was beyond the railing of the approach to the bridge, but on the approach thereto; and that the accident would not have happened had the team not scared at the old lumber. The jury returned a verdict for the plaintiff in the sum of $5,394.52, whereupon the defendant moved for a judgment on the special findings, notwithstanding the general verdict. This motion was denied, and judgment rendered for the plaintiff. Appellant complains of two or three rulings on the introduction of evidence, but they are of minor importance and could not have been seriously prejudicial to defendant, even if technically wrong.

The claim that it should have been permitted to show 1. NEGLIGENCE: custom as a defense. that it followed its usual custom in repairing this particular bridge is without merit, because it can not evade liability for its negligence on the ground that it was always negligent.

The defendant's real contention is that it should have had a judgment on the special findings, and that the court erred in instructing that the defendant might be found 2. SAME: repair of bridges: special finding. negligent for piling the old lumber where it would frighten a team while on the bridge or approach thereto, whether the lumber was, in fact, piled on the approach to the bridge or not. We are of the opinion that the special findings are not incon-

sistent with the general verdict. Three grounds of negligence were alleged: The piling of new plank on the bridge; the failure to fasten down some of the new plank already laid; and the piling of the old lumber at the north end of the bridge. The evidence shows without conflict that the team first became frightened at the pile of new plank, that this fright was increased by the loose condition of the new plank in the floor, and that the pile of old lumber contributed to the fright, and caused the team to swerve to the west, where it went over the embankment. All of these grounds of negligence were submitted to the jury, and they were instructed that a recovery might be had if it was found that defendant was negligent in any, or all, of the respects charged. The special findings are not that there was no negligence in leaving the pile of plank on the bridge, or in the failing to fasten down the new plank in the floor. The special findings go no further than to say that the old pile of lumber at the end of the bridge was not the original cause of the team's fright, and in finding that the accident would not have occurred if the team had not scared at the old lumber. The jury did no more than to say that, but for the pile of old lumber, the team would not have run off the embankment when and where it did. If the team had not been badly frightened, and partially, at least, beyond control when it first saw the old pile of lumber, no one can say that its fright then would have resulted disastrously. And the jury was justified in finding that, although the team was frightened and running as it approached the pile of old lumber, it would not have left the embankment had the pile not been there. It is a case, then, where two or more causes produced an accident, all of which causes are proximate, because, without the operation of all, no injury would have been inflicted. And in such cases liability exists. *Walrod v. Webster County,* 110 Iowa, 349; *Harvey v. Clarinda,* 111 Iowa, 528; *Gould v. Schermer,* 101 Iowa, 582. The record shows that the

bridge in question is a part of a turnpike highway something over a mile long. But it was shown on the trial that the general level of this embankment north of the bridge was two feet lower than the bridge and that the embankment was raised and narrowed to connect with the bridge. It was also shown that the old lumber was piled along the top of this embankment, with the south end of the pile two or three feet north of the bridge.

If it was so piled, it occupied at least a part of the higher embankment, and the jury was not without evidence to sustain its finding, in effect, that the old lumber occupied a part of the approach to the bridge.

3. SAME:
bridges:
approach.

Whether an approach to a bridge is a part of the bridge is generally a question for the jury. *Nims v. Boone County*, 66 Iowa, 272; *Moreland v. Mitchell County*, 40 Iowa, 394. But in the trial of this case below, and in argument here, it seems to be taken for granted that, if the old lumber rested on the additional fill made necessary to reach the bridge, its location there might be negligence for which the defendant would be liable.

And with a finding that this lumber was on the approach the defendant could not have been prejudiced by the instruction to which we have referred, even though wrong. It is claimed that certain instructions assumed the truth of facts which were in dispute, but we think this complaint without foundation.

4. SAME:
instructions.

The statement of the court that it was conceded that, when the defendant's men left Saturday night, the work of putting down the floor was not completed, was not error. It could not have been understood to mean that the new plank placed in the floor were left unspiked, and it was conceded that the work of replanking was not then finished.

5. SAME:
assumption
of facts.

The instructions asked by the defendant, so far as

applicable to the facts, were sufficiently embodied in those given by the court on its own motion.

Appellant contends that the amount of the verdict shows that it was the result of prejudice, and asks that it be set aside because thereof. While no bones were broken

**6. SAME:
personal
injury:
verdict.** in the accident, the evidence does show that the plaintiff's spine was seriously injured, and that such injury has probably permanently affected her nerves and general health. While the verdict appears large for the visible injuries received, we can not say that it is beyond fair compensation for her pain and suffering, and the permanent injury sustained. We find no error for which there should be a reversal, and the judgment must therefore be *Affirmed.*